IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCIS C. CARBAUGH,           )
                               )
            Plaintiff,         )
                               )        Civ. No. JFM-00-2719
      v.                       )
                               )
PANGBORN CORPORATION,          )
                               )
            Defendant.         )
_____)

MEMORANDUM

Plaintiff Francis C. Carbaugh has brought claims for discriminatory discharge and

retaliation under the Americans with Disabilities Act ("ADA"). Defendant Pangborn

Corporation ("Pangborn") has filed a Motion to Dismiss or for Summary Judgment. Carbaugh

has filed a Motion for Continuance Pursuant to Fed. R. Civ. P. 56(f) as well as an opposition to

Pangborn's motion. Discovery has not yet been completed. Pangborn's Motion to Dismiss will

be denied, Carbaugh's Motion for a Continuance will be granted, and Pangborn's Motion for

Summary Judgment will be denied without prejudice to being renewed at a later stage in

these proceedings.[1]

I.

Carbaugh worked as a production supervisor in Pangborn's manufacturing department

_____

[1] Carbaugh has also filed a Motion to File a Surreply. However, Carbaugh has failed to show that Pangborn raised new, relevant arguments in its reply. Therefore that motion will be denied. Even if that motion were granted, the arguments in Carbaugh's Surreply, which was filed with the motion, would not change this Memorandum.

1

until his termination on February 4, 1999. In July 1998, Carbaugh had surgery on his right knee and took a medical leave of absence. Carbuagh's job entailed walking to different parts of Pangborn's facility in order to supervise his employees. Carbaugh returned to work on December 7, 1998. After Carbaugh's return, his right knee was impaired. According to Carbaugh, at the time of his termination, he could not kneel, he could not walk more than one hundred feet, he could not stand for more than ten to fifteen minutes, and, if he stood or walked too long, his leg would go numb.

Carbaugh requested to use a motorized scooter at work. At first, Pangborn denied Carbaugh's request because it was concerned about whether a scooter could be safely used in close proximity to the machinery at Pangborn's facility. Pangborn did modify Carbaugh's duties to allow him to avoid walking long distances on concrete floors. In January, Carbaugh filed a charge of discrimination with the Maryland Commission on Human Relations. After the charge was filed, Carbaugh met with Pangborn, and Pangborn agreed to let Carbaugh use a scooter if he purchased it.

On February 4, 1999, Pangborn announced a significant reduction in force. Carbaugh and 15 other salaried employees were laid off. Carbaugh contends that he was terminated because of his disability in violation of the ADA. In the alternative, he contends that he was terminated in retaliation for his filing of a charge of discrimination.

II.

Carbaugh has moved under Fed. R. Civ. P. 56(f) for a continuance of Pangborn's Motion to Dismiss or for Summary Judgment. Under Fed. R. Civ. P. 56(f), summary judgment should not be granted until after the party opposing summary judgment has had an opportunity to

2

complete relevant discovery.  In order for a Rule 56(f) continuance to be granted, the moving

party must supply an affidavit stating what discovery is needed in order to prepare the party's

case.  See Strag v. Board of Trustees, 55 F.3d 943, 953-54 (4th Cir. 1995).

Pangborn has moved for summary judgment on Carbaugh's claims for discrimination and

retaliation under the ADA.  For Carbaugh's discrimination claim, he must show: (1) he is

disabled; (2) he was qualified to perform the essential functions of his position with reasonable

accommodation; (3) he was terminated under circumstances giving rise to the inference that his

termination was because of his disability.  See, e.g., Halperin v. Abacus Tech. Corp., 128 F.3d

191, 197 (4th Cir. 1997).  For his retaliation claim, he must show: (1) he engaged in a protected

activity; (2) Pangborn terminated him; (3) and a causal connection exists between the protected

activity and the termination.  See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).  Carbaugh has

submitted an affidavit describing the discovery he needs in order to prove these elements.

The facts needed for the second and third elements of Carbaugh's discrimination claim

and the third element of Carbaugh's retaliation claim concern Carbaugh's termination.

Specifically, Carbaugh needs discovery relating to Pangborn's reasons for his termination.

Pangborn has asserted that Carbaugh was terminated in connection with a significant reduction in

force.  Carbaugh has the right to test Pangborn's reasons for his inclusion in the reduction in

force, including when Pangborn decided to terminate Carbaugh and Carbaugh's work

performance as compared to other employees.

Carbaugh is also entitled to a Rule 56(f) continuance related to the first element of his

discrimination claim, which concerns whether he is disabled.  Pangborn argues that it does not

have Carbaugh's medical records and that Carbaugh does not need subpoena power in order to

3

get his medical records from the hospital. However, these arguments are besides the point. Carbaugh's affidavit states that he needs more time to acquire medical records and depose an expert witness concerning Carbaugh's disability. Rule 56(f) states that a continuance should be granted in order to "permit affidavits to be obtained or depositions to be taken or discovery to be had." Rule 56(f) continuances are not limited to situations where a party needs discovery from another party.

Pangborn argues that Carbaugh's affidavit is insufficient because it was signed by Carbaugh's lawyer, and not by Carbaugh himself. Neither the case cited by Pangborn, Bryant v. O'Connor, nor Rule 56(f) require that the affidavit be signed by the party and not the party's lawyer. See Bryant, 671 F. Supp. 1279, 1282-83 (D. Kan. 1986). As Carbaugh points out, requiring a party, as opposed to the party's lawyer, to sign the affidavit does not make sense given that the affidavit must present legal arguments about the party's need for discovery. In all likelihood, only the party's lawyer will have the personal knowledge required to sign the affidavit.

Pangborn also argues that summary judgment should be granted because of allegedly contradictory statements made by Carbaugh. I will consider the effect of these statements when Pangborn renews its motion for summary judgment after the completion of discovery. However, I note that Carbaugh's statements are not necessarily contradictory. For example, Pangborn argues that because Carbaugh stated that he was able to perform his job he is precluded from arguing that he was disabled. (Reply at 2; see also Carbaugh Aff. at ¶¶33-36.) For his ADA claim, Carbaugh must prove that he was able to perform his job with reasonable accommodations. He must also prove that he was disabled. These are distinct elements, and, of

4

course, it is possible to prove both without contradiction.

Because discovery has not been completed and Carbaugh has produced an affidavit detailing the specific discovery he needs to respond to Pangborn's motion for summary judgment, Carbaugh's Motion for a Rule 56(f) Continuance will be granted.

III.

Because Carbaugh's motion for a Rule 56(f) continuance will be granted, Pangborn's Motion to Dismiss or for Summary Judgment will be treated as a motion to dismiss. The majority of Pangborn's arguments in its motion are that Carbaugh cannot meet his burden of proof. I will consider these arguments when Pangborn renews its summary judgment motion. Excluding these arguments, Pangborn's remaining argument is that, as a matter of law, even if Carbaugh can prove the impairments that he claims, he is still not disabled under the ADA.

As stated supra, Carbaugh must prove that he is disabled as part of his prima facie case under the ADA. See, e.g., Halperin v. Abacus Tech. Corp., 128 F.3d 191, 197 (4th Cir. 1997). In order to be disabled under the ADA, Carbaugh must have a (1) physical or mental impairment that (2) substantially limits (3) a major life activity. See 42 U.S.C. § 12102(2)(A). Carbaugh's claimed foot injury constitutes an impairment. Carbaugh argues that his impairment limits the major life activities of walking[2] and working. The parties dispute whether Carbaugh's impairment substantially limits those major life activities.

A.

The precise point at which an impairment of an employee's ability to walk is considered a

---

[2] The parties have described Carbaugh's limitations in walking, standing, and kneeling as limitations to mobility.

5

substantial limitation is not easily determined.  See Kelly v. Drexel Univ., 94 F.3d 102, 108 (3d Cir. 1996) ("It is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA.").  At the one extreme, "[a]n individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking." 29 C.F.R. § 1630.2(j).  For example, Equal Employment Opportunity Commission v. Sears, Roebuck & Co. held that an employee who allegedly had difficulty walking one city block would have a substantial limitation on her ability to walk. 233 F.3d 432, 438 (7th Cir. 2000).  At the other extreme, case law has established that "comparatively minor restrictions on the ability to walk are not disabilities." Kelly, 94 F.3d at 106; see also, e.g., Puoci v. City of Chicago, 81 F. Supp. 2d 893, 896-97 (N.D. Ill. 2000) (listing cases); McCleary v. National Cold Storage Inc., 67 F. Supp. 2d 1288, 1300-01 (D. Kan. 1999) (listing cases).

For example, Kelly held that an employee who could not jog, had trouble climbing stairs, and could not walk more than a mile was not substantially limited in walking under the ADA. Kelly, 94 F.3d at 106.  Vass v. Riester & Thesmacher Co. held that an employee who often lost his balance, had trouble bending, squatting, and walking up stairs, and experienced pain after standing for more than 30 minutes was not substantially limited in his ability to walk under the ADA. 79 F. Supp. 2d 853, 860-61 (N.D. Ohio 2000). Puoci held that an employee who walked with a limp, experienced numbness in his legs, and could not walk more than a mile and a half without pain was not substantially limited in his ability to walk under the ADA. 81 F. Supp. 2d at 896-97.

According to Carbaugh's complaint, his ability to walk is substantially impaired.

6

(Complaint at ¶46.)  In his opposition, Carbaugh states more specifically that, at the time of his

termination, he could not kneel, he could not walk more than one hundred feet, he could not

stand for more than ten to fifteen minutes, and, if he stood or walked too long, his leg would go

numb.  (Carbaugh's Opp. at 12-13.)  Unlike the employees in Kelly, Vass, and Puoci, Carbaugh

is unable to walk more than very short distances.  See EEOC v. Sears, 233 F.3d at 438; 29 C.F.R.

§ 1630.2(j).  Carbaugh's alleged inability to walk more than short distances, when combined

with his difficulty standing and kneeling, may constitute a substantial impairment in the major

life activity of walking.  That issue can be determined when Pangborn renews its summary

judgment motion.

   Whether an employee is disabled is determined with reference to any mitigating or

corrective measures taken by the employee.  See Sutton v. United Air Lines, Inc., 527 U.S. 471,

488-89 (1999).  The use of a scooter is not a mitigating measure for determining whether an

employee is substantially disabled with respect to the major life activity of walking.  See id. at

488 ("[I]ndividuals who use prosthetic limbs or wheelchairs may be mobile and capable of

functioning in society but still be disabled because of a substantial limitation on their ability to

walk or run.");  Finical v. Collections Unlimited, Inc., 65 F. Supp. 2d 1032, 1039 (D. Az. 1999).

But c.f. EEOC v. Sears, 233 F.3d at 439 (use of a cane is a mitigating measure for the major life

activity of walking).  Although employees who use prosthetic limbs, wheelchairs, or scooters

may be substantially or completely limited in their ability to walk or run, they may also be highly

mobile and capable of functioning in society.  The ADA covers these employees.  To conclude

otherwise would "eviscerate the ADA" by rendering it "inapplicable to those individuals most

likely to have the capacity to perform various jobs capably if provided with reasonable

accommodations." Finical, 65 F. Supp. 2d at 1039.

B.

The analysis differs for Carbaugh's claim that he is substantially limited in the major life activity of working. An ADA plaintiff must be unable to perform a broad range of jobs in order to be substantially limited in the major life activity of working. See Williams v. Channel Master Satellite Systems, Inc., 101 F.3d 346, 349 (4th Cir. 1996), modified on other grounds by Baird v. Rose, 192 F.3d 462, 469 n.8 (4th Cir. 1999). Carbaugh claims that he is unable to perform a broad range of jobs, including all jobs that require standing or walking. However, under Sutton, whether Carbaugh is substantially limited in the major life activity of working must be determined with respect to corrective and mitigating measures. 527 U.S. at 488. Unlike the major life activity of walking, a scooter is a relevant mitigating measure for the major life activity of working. A scooter cannot increase Carbaugh's ability to walk, but it can increase his mobility, which allows him to perform many jobs he otherwise could not. Carbaugh has not asserted that, with the use of a scooter, he is unable to perform a broad range of jobs. Therefore, under Sutton, he has not alleged facts sufficient to show that he is substantially limited in the major life activity of working. Id.; Nawrot v. CPC Int'l, 2000 WL 816787, at *6 (N.D. Ill.) (diabetic was not substantially limited in major life activity of working because his diabetes was controlled through insulin and diet).

A separate order effecting the rulings made in this memorandum is attached.

Date: _____

_____
J. Frederick Motz
United States District Judge

8